J-A22008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LAVARR C. PETERS :
:
Appellant : No. 894 WDA 2023

Appeal from the Judgment of Sentence Entered June 1, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008756-2019

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:                **FILED: October 28, 2024**

Lavarr C. Peters (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count each of robbery, burglary, aggravated assault, and theft by unlawful taking.[1]  We affirm.

We summarize the underlying facts as follows: Valerie Townsend (Ms. Townsend) testified that, on June 25, 2019, in the middle of the night, she was at home in bed upstairs, when she heard a loud bang.  N.T., 8/1/19, at 5-6.[2]  Hearing voices downstairs, Ms. Townsend tried to close her bedroom door, but two men came upstairs and pushed the door open.  *Id.* at 6.  Ms.

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(i), 3502(a)(1)(i), 2702(a)(1), 3921(a).

[2] Ms. Townsend testified at Appellant's preliminary hearing on August 1, 2019. The preliminary hearing transcript was later stipulated to as part of the trial record.  *See* N.T., 3/6/23, at 15.

Townsend did not recognize either man, but later identified them as Appellant

and Malik Milligan (Milligan). *Id.* at 7-9.

Ms. Townsend testified:

One of them pushed me down, and I fell on the floor near my bed. Then they started to tear the bedroom apart. They ransacked the bedroom. Both of them were hitting me different times on the side of my face and in my face, asking me where the money was. That went on for a while. Then one of them made me take my clothes off….

*Id.* at 6-7; *see also id.* at 17-18 (Ms. Townsend's testimony that Appellant

hit her multiple times in the face with an open hand).

Ms. Townsend testified Appellant and Milligan

continued to ransack the bedroom, asking for money. At one point, I went into a bedroom dresser drawer, and I got four $100 bills out of the drawer and handed [the money] to one of the men that was there.

Then one of them … took all the jewelry and everything that was on my dresser…. Then I was made to go across the second floor [to another bedroom], and those two men were in that room, ripping that room apart looking for things….

They were destroying that room, ransacking that room like they had done in my bedroom. One of them, I can't remember who, but they kept asking, "Where's the money?", and I said, "There isn't any money."

I had books in that room on a bookcase, and one of them took some chapter books, and [he] threw them at my head while I was kneeling on the floor.

*Id.* at 7-9.

Ms. Townsend testified Appellant and Milligan then made her

go downstairs into my living room. One of them asked, well, they asked where is my bank card. I said, "It was in my purse." When I was upstairs, they kept asking me what the pin number was for

the bank card, but I couldn't remember the pin number because I was so afraid.

So, I went down to the living room because that's where they wanted me to be. Someone brought my purse into the living room. They got the wallet out and took the bank card. They took a credit card. I pointed out to them that there was an envelope [in my purse] that had some more money in it …, and I gave that to them as well.

Before they did that, one of them made me sit in my chair in my living room. He made put my legs up in the chair, and he leaned in real close. I kept asking him, "Please, please don't rape me," and he said … he didn't want any old black bitch cunt, and he had an ink pen in his hand, and I thought he was going to violate me with that ink pen.

*Id.* at 10. When asked to identify which man made her sit in the chair, Ms. Townsend testified, "I'm not 100 percent sure, but I believe it was [Appellant]." *Id.* at 11; *see also id.* at 17 (Ms. Townsend's testimony that she is "100 percent sure" in her identification of Appellant as one of the intruders); *id.* at 18 (Ms. Townsend's testimony that "one of [the intruders] pulled some of my hair out on the top of my head."); *id.* at 19 (Ms. Townsend's testimony that Appellant made specific threats of harm towards her).

Ms. Townsend saw two more people downstairs, a male and a female. *Id.* at 7, 10-12. She recognized the other male as Tavon Moon (Moon), her former foster child. *Id.* at 12. She testified the situation "really escalated" when the intruders realized she had recognized Moon:

The one kept saying to me, "You don't know him, bitch. You don't know him, do you, bitch?" I said, "No, I don't know him. I don't know him."

I was down on my knees, and I don't know who did it, but someone threw a ceramic pot across the dining room, and it hit

the wall, and it shattered.  I got cut [and] I had to get stitches …, because when the ceramic pot broke, it just sprayed everywhere.

… [T]hen one of them made me go back upstairs to my bathroom and made me sit on my toilet.  They closed the door, and … I thought, "Oh, thank God, they're finally going to leave," but that's not what happened.

One of them came back, and I think it was [Milligan], came back with a pot from my kitchen, and he … opened the bathroom door, and he swung the pot, and hit me on the top of my head with this pot, and I fell on the bathroom floor[,] because he hit me really hard with this pot.

I was trying to protect my head, and [he] kept saying, "Get your hands away from your head, bitch.  Get your hands away. Get your hands away."  So I took my hands away, and he just kept hitting me over and over and over[,] all on the top of my head with this pot.

*Id.* at 13-14.

At this point, Ms. Townsend "thought, 'I have to be still and pretend that I'm dead,' and that's what I did."  *Id.* at 14.  She "gave a big sigh," closed her eyes, laid on the bathroom floor, and did not move.  *Id.*  The assailant left, and Ms. Townsend "laid there probably for about five minutes because I was so afraid to do anything."  *Id.*  She then crawled to a phone and called 911.  *Id.*

Ms. Townsend testified the intruders "stole my car out of my garage." *Id.* at 15.  Additionally, "[t]hey stole my cell phone, my TV in my living room, just about all of my jewelry, credit card, bank card, and cash."  *Id.*

Responding to Ms. Townsend's 911 call, police found her back door had been "obviously kicked in." Police Report, 6/25/19-7/26/19, at 5.[3] Ms. Townsend told police "that the [intruders] repeatedly told her if she resisted or called the police[,] they would kill her." *Id.* at 6. Police reported Ms. Townsend "was utterly devastated and traumatized by the ordeal and had great difficulty speaking with us." *Id.* In Ms. Townsend's bathroom, police found blood on the floor and "a dented stainless steel" cooking pan. *Id.*; *see also id.* at 5 (police observation that Ms. Townsend "was bleeding from her head and face"); *id.* at 13 (Ms. Townsend told police she believed the intruders were "trying to kill her" because she had recognized Moon, and she pretended to be dead because "she knew she was going to die").

Police reported the intruders had taken Ms. Townsend's car keys and fled in her vehicle, a 2007 Toyota Corolla. *Id.* at 6. Police issued a radio bulletin for the vehicle, and soon thereafter, police stopped the vehicle. *Id.* at 6-7. Appellant was driving, and the passengers included Milligan, Moon, and a juvenile female. *Id.* at 7. Police found Ms. Townsend's debit card in Appellant's front pants pocket. *Id.* Police arrested all four individuals.[4] *Id.*

_____

[3] The police report was stipulated to as part of the trial record. *See* N.T., 3/6/23, at 15.

[4] Police later determined the juvenile female in the vehicle was not the female present during the robbery. *See* Police Report at 8.

Appellant waived his ***Miranda***[5] rights and gave a statement to police. Appellant "admitted to being at [Ms. Townsend's] home and participating in the event." ***Id.*** He denied taking items from the home, but admitted to "receiv[ing]" items from Milligan and Moon. ***Id.*** Appellant admitted he took possession of Ms. Townsend's wallet, containing $400 in cash. ***Id.*** Appellant "vehemently denied assaulting Ms. Townsend or making her" remove her clothes. ***Id.***

The Commonwealth subsequently charged Appellant[6] with the above offenses, as well as several additional offenses, including criminal conspiracy.[7] Before trial, the Commonwealth withdrew all but the above-listed offenses. On March 6, 2023, Appellant's case proceeded to a stipulated non-jury trial. The parties stipulated to the facts set forth in "the affidavit of probable cause, the 14-page Police Report, [Ms. Townsend's] 911 call, the transcript of the 911 call[,] and [Appellant's] preliminary hearing transcript." Trial Court

---

[5] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[6] The Commonwealth also charged Milligan and Moon. On October 18, 2021, Milligan and Moon pled guilty to one count of each of robbery, burglary, and aggravated assault. ***See Commonwealth v. Milligan***, 304 A.3d 791, 1186 WDA 2022 (Pa. Super. 2023) (unpublished memorandum at 1-2) (affirming Milligan's judgment of sentence). At their plea hearing, Milligan and Moon both "stipulated that they conspired with each other and with [Appellant] on [June 25, 2019,] to commit burglary, robbery, and assault on [Ms. Townsend.]" ***Id.*** (unpublished memorandum at 2).

[7] 18 Pa.C.S.A. § 903(a)(1).

Opinion, 12/22/23, at 3 (some capitalization modified); *see also* N.T., 3/6/23, at 15. The trial court convicted Appellant of the above offenses.

On June 1, 2023, the trial court imposed an aggregate sentence of 14½ to 30 years in prison. Appellant filed timely post-sentence motions, which the trial court denied. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents two questions for our review:

1. Whether [Appellant's] conviction for Robbery must be reversed where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] "inflict[ed] serious bodily injury" upon Ms. Townsend as required under 18 Pa.C.S.A. § 3701(a)(1)(i)?

2. Whether [Appellant's] conviction for Aggravated Assault must be reversed where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] "attempt[ed] to cause serious bodily injury" to Ms. Townsend or "caused such injury" to her as required under 18 Pa.C.S.A. § 2702(a)(1)?

Appellant's Brief at 10.

As both of Appellant's issues challenge the sufficiency of the evidence establishing the element of serious bodily injury, we consider them together. Appellant does not dispute that Ms. Townsend suffered serious bodily injury, but argues the Commonwealth presented insufficient evidence to establish *Appellant* inflicted that injury. *Id.* at 24. He contends his stipulated non-jury trial took place "against th[e] backdrop" of the Commonwealth's decision to withdraw the criminal conspiracy charge. *Id.* at 22. Therefore, he asserts, "the Commonwealth necessarily had to prove, beyond a reasonable doubt, that [***Appellant***] ***himself*** caused serious bodily injury to Ms. Townsend." *Id.*

(emphasis in original). Appellant argues Ms. Townsend's testimony established that Appellant "only slapped [Ms. Townsend] several times in the face." *Id.* at 23. He contends this evidence does not support a finding that he caused or intended to cause serious bodily injury. *Id.* at 28.

Regarding the other acts of violence committed against Ms. Townsend, Appellant maintains Ms. Townsend either identified Milligan as the perpetrator or could not identify the perpetrator. *Id.* at 23-24. Appellant argues Ms. Townsend's "account of the incident was generic and vague as to which assailant engaged in what conduct," and does not sufficiently identify Appellant as the perpetrator of any violence other than slapping. *Id.* at 24.

The Commonwealth counters that it established Appellant caused serious bodily injury under a theory of accomplice liability. *See* Commonwealth's Brief at 8-26. The Commonwealth notes that conspiracy and accomplice liability are different concepts, and argues its withdrawal of the conspiracy charge does not affect Appellant's liability as an accomplice. *Id.* at 11; *see also id.* at 12 n.1 (citing *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa. Super. 2002) (discussing the distinction between conspiracy and accomplice liability)). Under accomplice liability, the Commonwealth argues, "the question of who actually beat [Ms. Townsend] is not dispositive." *Id.* at 17. The Commonwealth maintains "[t]he evidence, viewed in the light most favorable to the Commonwealth …, established that [A]ppellant acted in concert with [Milligan and Moon] in furtherance of a criminal objective[,] and

was culpable for their actions in causing or attempting to cause serious bodily injury." *Id.* at 8.

> The Commonwealth argues the
>
> evidence indicated that [A]ppellant aided in this crime, during which he struck [Ms. Townsend] multiple times, and Milligan forced the victim into the bathroom and savagely beat her in the head with a frying pan. It is reasonable to conclude that these actions were taken to back up the threat that the actors would kill [Ms. Townsend] if she contacted police. Subsequently, [A]ppellant acted as the getaway driver in stealing [Ms. Townsend's] car, and her credit card was found in his pants pocket. This evidence establishes that [A]ppellant promoted the offense by contributing to its progress or growth. The criminal intent shared between Moon, Milligan and [A]ppellant can be inferred from this conduct and the circumstances of the offense.

*Id.* at 18-19 (citations and footnote omitted).

In his reply brief, Appellant argues the Commonwealth failed to establish accomplice liability. *See* Appellant's Reply Brief at 7-10.[8] He asserts the

---

[8] Appellant also argues the Commonwealth waived the theory of accomplice liability by advancing it "for the first time on appeal." Appellant's Reply Brief at 1; *see id.* at 1-6. He maintains the Commonwealth should have raised the theory in a closing argument after the trial court reviewed the stipulated evidence, but Appellant notes that both parties declined to make any closing argument. *Id.* at 2-3 (citing N.T., 3/6/23, at 14-15). Appellant's waiver argument is meritless for several reasons.

First, at Appellant's preliminary hearing, the Commonwealth asserted its "theory that [Appellant, Milligan, and Moon] acted in concert with each other throughout the course of all these events." N.T., 8/1/19, at 22; *see also* N.T., 3/6/23, at 15 (Appellant's preliminary hearing transcript stipulated as part of the trial record). Second, "a trial court, acting as the finder of fact, is presumed to know the law…." *Commonwealth v. Smith*, 97 A.3d 782,
*(Footnote Continued Next Page)*

Commonwealth did not present evidence that Appellant "aided, agreed, solicited, or attempted to aid anyone in inflicting serious bodily injury on Ms. Townsend." *Id.* at 8.

When reviewing a sufficiency claim, this Court

> must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a

_____

788 (Pa. Super. 2014). Thus, the Commonwealth did not have to argue accomplice liability in order for the trial court to consider it.

Third, the authorities Appellant cites regarding waiver apply primarily to appellants, not appellees. *See* Appellant's Reply Brief at 4-5 (citing Pa.R.A.P. 302; *Commonwealth v. Ballard*, 80 A.3d 380, 400 (Pa. 2013) (holding appellant waived claims "by failing to object on those grounds at trial."); *Villani v. Seibert*, 159 A.3d 479, 490 n.8 (Pa. Super. 2017) (declining to reach appellant's "supplemental argument[s]" which appellee asserted had not been raised below); *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 676 A.2d 652, 658 (Pa. 1996) (declining to reach appellant's arguments because a "different theory of relief cannot be advanced for the first time on appeal."); *Anderson v. McAfoos*, 57 A.3d 1141, 1150 (Pa. 2012) (holding appellant failed to preserve a claim "not properly raise[d]" below)). We note **Appellant raised his sufficiency claims for the first time on appeal**, as specifically authorized under Pa.R.Crim.P. 606(A)(7). Therefore, it is appropriate for the Commonwealth to rebut those claims by fully developing its accomplice liability argument for the first time on appeal.

Finally, it "is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." *Commonwealth v. Lehman*, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (citation omitted). As we discuss *infra*, we interpret the trial court's decision as implicitly relying on accomplice liability. However, even if the trial court did not consider accomplice liability, we could consider it under "the right-for-any-reason doctrine." *Commonwealth v. Hamlett*, 234 A.3d 486, 491 (Pa. 2020) (observing that "a core precept underlying the right-for-any-reason doctrine … is that only *appellants* are charged with issue preservation obligations, whereas *appellees* bear none." (emphasis in original; citations omitted)).

- 10 -

reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Peralta*, 311 A.3d 1, 4 (Pa. Super. 2024) (citation omitted).

A person is guilty of robbery under Section 3701(a)(1)(i) if, "in the course of committing a theft, he … inflicts serious bodily injury upon another." 18 Pa.C.S.A. § 3701(a)(1)(i). A person is guilty of aggravated assault under Section 2702(a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life…." *Id.* § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

The statute governing accomplice liability provides, in relevant part:

**(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.--**When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

*Id.* § 306(a)-(d).

In order to sustain a conviction based on accomplice liability, the Commonwealth must demonstrate that an individual acted with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense. … [A] shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances.

*Commonwealth v. Le*, 208 A.3d 960, 969 (Pa. 2019) (citations omitted).

Interpreting Section 306(c)(1), we have observed that "promoting" the commission of an offense means "contribut[ing] to [its] progress or growth," while "facilitating" means "mak[ing] the commission of a crime easier" or

- 12 -

"mak[ing] it easier for another person to commit a crime." ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1252 (Pa. Super. 2005) (citation omitted).

"Accomplice liability requires only aid, not an agreement." ***Commonwealth v. Jordan***, 212 A.3d 91, 95 (Pa. Super. 2019) (citation omitted). "Accomplice liability can be established by circumstantial evidence. In meeting its burden, the Commonwealth may rely wholly upon circumstantial evidence." ***Id.*** (citation omitted).

> [A] defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***Commonwealth v. Barnes***, 871 A.2d 812, 822 (Pa. Super. 2005) (citation omitted); ***see also id.*** at 822-23 (holding evidence was sufficient to convict appellant as an accomplice to robbery, where co-defendant shot the victim and appellant immediately "pilfered [the victim's] corpse" for money and drugs); ***Commonwealth v. Hatchin***, 709 A.2d 405, 406-10 (Pa. Super. 1998) (holding evidence was sufficient to convict appellant as an accomplice to aggravated assault, where appellant locked an apartment door and attempted to close the window while co-defendant held the victim at gunpoint and demanded the return of his property; co-defendant then shot the victim, and appellant and co-defendant fled together).

Regarding the difference between conspiracy and accomplice liability, we have observed:

"The intent required for criminal conspiracy is identical to that required for accomplice liability. In both crimes a defendant must act with the intent of promoting or facilitating the offense." ***Commonwealth v. Davenport***, 452 A.2d 1058, 1062 (Pa. Super. 1982). However, a mere finding that an individual was an accomplice of the criminal actor does not automatically establish that the individual was a conspirator with the actor. **Accomplice liability and conspiracy are not one and the same crime.** ***Commonwealth v. Petrie***, 419 A.2d 750, 752 (Pa. Super. 1980). Conspiracy requires proof of an additional factor which accomplice liability does not, namely the existence of an agreement. ***Commonwealth v. Graves***, 463 A.2d 467, 469 (Pa. Super. 1983).

***Murphy***, 795 A.2d at 1038 (emphasis added; citations modified). Thus, conspiracy and accomplice liability are distinct concepts. In the instant case, the Commonwealth's decision to withdraw the conspiracy charge against Appellant had no bearing on the application of accomplice liability to the remaining charges.

The parties disagree as to whether the trial court relied on accomplice liability in convicting Appellant. ***See*** Commonwealth's Brief at 25; Appellant's Reply Brief at 5. Addressing Appellant's sufficiency claims in its Rule 1925 opinion, the trial court set forth only the following brief analysis:

The evidence submitted at trial established beyond a reasonable doubt, really beyond any doubt, that [**Appellant**]**, along with Malik Milligan, Tavon Moon, and an unidentified female**[**,**] **invaded the home of** [**Ms.**] **Townsend.** **They savagely beat her, threatened her, and robbed her.** **They left her only after she pretended to be dead on the bathroom floor.** **They left in her car and were stopped a short time later by Pittsburgh Police.** [Appellant] was driving [Ms. Townsend's]

- 14 -

vehicle and had her credit card in his pants pocket. When taken to the police station[, Appellant] waived his right to remain silent and told police that he went to [Ms.] Townsend's home[,] and once there[,] the robbery began and [Appellant] just "got caught up in it." [Appellant] admitted to his part in stealing items from [Ms. Townsend's] home.

Trial Court Opinion, 12/22/23, at 3-4 (emphasis added).

Appellant argues "nothing in the trial court's opinion implied that it relied on accomplice liability when evaluating the Commonwealth's case." Appellant's Reply Brief at 5. We disagree. Though the trial court did not explicitly mention the concept, we interpret its analysis as determining Appellant's liability as an accomplice. The trial court repeatedly referred to Appellant and the three other intruders collectively, finding "[t]**hey** savagely beat [Ms. Townsend], threatened her, and robbed her," and "[t]**hey**" stole her car. Trial Court Opinion, 12/22/23, at 3 (emphasis added). These references indicate the trial court, as trier of fact, considered Appellant accountable for the collective conduct of his fellow intruders.

We therefore discern the trial court convicted Appellant on accomplice liability grounds. Even if the trial court did not consider accomplice liability, we affirm on those grounds. *See Lehman*, 275 A.3d at 520 n.5.

Our review discloses the evidence supports a finding that Ms. Townsend suffered serious bodily injury when Milligan repeatedly struck her in the head with a stainless steel cooking pot, hitting her so hard as to dent the pot. This brutal attack caused Ms. Townsend to bleed from the head and face, and made her believe she was going to die.

The evidence also supports holding Appellant accountable for Milligan's conduct as an accomplice. In his statement to police, Appellant "admitted to being at [Ms. Townsend's] home and participating in the event." Police Report at 7. The evidence overwhelmingly demonstrated that Appellant and Milligan shared a criminal intent to rob Ms. Townsend, and to use violence and intimidation to coerce her into revealing the location of valuables and dissuade her from calling the police. Appellant himself, at the very least, ransacked the second floor bedrooms, repeatedly struck Ms. Townsend in the face, and threatened her with violence and sexual assault. Additionally, Appellant drove the getaway vehicle,[9] and police found him in possession of the fruits of the robbery, including Ms. Townsend's vehicle, debit card, wallet, and cash.

_____

[9] The Commonwealth points to caselaw in which a defendant's role as getaway driver supported his culpability as an accomplice. *See* Commonwealth's Brief at 18 n.4, 24-25 (citing *Commonwealth v. Calderini*, 611 A.2d 206, 209 (Pa. Super. 1992) ("[D]espite the fact that there was no direct evidence placing appellant at the scene of the robbery, we hold that the evidence that he was driving the getaway car a short time after the robbery, that he falsely identified himself to police[,] and that he had in his possession fruits of the robbery was sufficient to establish circumstantially that appellant was an accomplice in the commission of the robbery."); *Commonwealth v. Lambert*, 795 A.2d 1010, 1025 (Pa. Super. 2002) (holding evidence was sufficient to convict appellant as an accomplice to burglary where he drove co-defendant to the victim's home, kept "the passenger door wide open, and called for [co-defendant] to return to the getaway car to enable a quick escape after the house had been burglarized."); *Commonwealth v. Causey*, 833 A.2d 165, 173 (Pa. Super. 2003) ("The evidence at trial showed that appellant, at the very least, was the getaway driver of the vehicle from which his brother shot at the victim. We conclude that the evidence, if believed, was sufficient for the jury to find that all the elements of aggravated assault had been proven against appellant under a theory of accomplice liability….")).

This evidence, viewed in the light most favorable to the Commonwealth, is sufficient to prove Appellant acted as an accomplice with respect to the "serious bodily injury" elements of robbery and aggravated assault. Accordingly, Appellant's issues merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2024